UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ARRIVE AI, INC. a Delaware Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-02026-JRO-MJD |
| | ) | |
| MYRON WRIGHT, | ) | |
| WRIGHT FLYER CONSULTING GROUP | ) | |
| INC. a Kentucky Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION TO TRANSFER TO
WESTERN DISTRICT OF KENTUCKY**

Before the Court is Defendants' Motion to Transfer, seeking transfer of this case to the Western District of Kentucky. Dkt. [50]. The Court **GRANTS** Defendants' motion and **TRANSFERS** this case.

## I. BACKGROUND

The Court accepts the facts as alleged in the amended complaint and the consulting agreement referenced therein as true for the purpose of ruling on the motion to transfer. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 n.14 (7th Cir. 2003).

This is a trade secrets case between Plaintiff Arrive AI, Inc. ("Arrive AI"), an artificial intelligence company incorporated in Delaware and headquartered in Indiana, and its former consultant, Myron Wright. Wright, a resident of Louisville, Kentucky, did business with Arrive AI through his corporation, Wright Flyer Consulting Group Inc., a Kentucky corporation headquartered in the

Western District of Kentucky.  Both Wright and his corporation are defendants here (collectively "Wright").

On October 14, 2022, the parties entered into a written consulting agreement which contained the following provision:

> **Law and Jurisdiction**. The laws of the Commonwealth of Kentucky apply to this Agreement, without deference to the principles of conflicts of law. Both jurisdiction and venue for any litigation pursuant to this Agreement shall be proper in the courts of the Western District of Kentucky.

Dkt. 50-1 at 4.  Defendants performed their contractual obligations pursuant to this agreement in Kentucky.  Dkt. 23-1 at 5; *see also* dkt. 53-13.

On January 2, 2025, Arrive AI terminated the agreement.  Arrive AI alleges that thereafter, Wright shared Arrive AI's confidential, proprietary, and trade-secret information with competitors without Arrive AI's consent, in breach of the agreement.  Arrive AI filed this suit on October 3, 2025.  Dkt. 1.  Wright filed a motion to transfer or in the alternative dismiss the case.  Dkt. 8.  After Arrive AI filed an amended complaint, Wright renewed both motions.  Dkts. 48, 50.

The Court addresses only the motion to transfer in this order.

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Congress passed Section 1404(a) to "codif[y] . . . the doctrine of *forum non conveniens* . . . [when] the transferee forum

2

is within the federal court system." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013).

Section 1404(a) places "discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness,'" as the doctrine of *forum non conveniens* requires. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)); *accord Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 22, 26 (1960). "[T]he overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice.'" *Atlantic Marine*, 571 U.S. at 63.

The traditional balancing test of convenience and public interest considerations "changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atlantic Marine*, 571 U.S. at 63 (quoting *Stewart*, 487 U.S. at 31). Section 1404(a) "permits transfer to any district where venue is also proper (*i.e.,* 'where [the case] might have been brought') or to any other district to which the parties have agreed by contract or stipulation." *Id.* at 59 (quoting Section 1404(a)). Indeed, "a proper application of [Section] 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Id.* at 59–60 (cleaned up).

The movant usually bears the burden of establishing that the transferee forum is clearly more convenient. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). However, when a mandatory venue clause is at issue,

the party opposing enforcement of the clause "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Atlantic Marine,* 571 U.S. at 63.

### III. DISCUSSION

Neither party disputes that this lawsuit arises out of their consulting agreement, at least in part, and that this agreement contains a venue-selection clause. Arrive AI argues the venue-selection clause is permissive and does not require transfer. Dkt. 53 at 5. Defendants disagree and argue the venue-selection clause is mandatory and that public interest factors do not counsel against transfer.

Both parties cite *Muzumdar v. Wellness Int'l Network, Ltd.,* 438 F.3d 759 (7th Cir. 2006), and dispute whether it controls here. In *Muzumdar,* the Seventh Circuit contrasted venue provisions that merely specified a jurisdiction with those that also had "some further language indicating the parties' intent to make venue exclusive." *Id.* at 762 (citing *Paper Exp, Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753 (7th Cir. 1992)). Where jurisdiction is merely specified, without any accompanying mandatory or obligatory language, "the clause will generally not be enforced." *Id.* But "where venue is specified with mandatory or obligatory language, the clause will be enforced . . . ." *Id.*

One scholar has described this approach to interpreting venue clauses as one of "magic words." John F. Coyle, *Interpreting Forum Selection Clauses,* 104 Iowa L. Rev. 1791, 1800 (2019). "The words 'exclusive' or 'sole' are generally recognized to convey [mandatory] intent. Statements that a claim 'must' be

4

brought in a particular forum or that it may 'only' be brought in that forum also suffice."  *Id.*   Indeed, the Seventh Circuit has concluded that use of the word "shall" creates a mandatory provision.  *IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022).

*Muzumdar* applied this approach.  There, the Seventh Circuit construed two different forum selection clauses, one that said venue "shall be proper only" in the selected forum and the other that said venue "shall be proper" in the selected forum.  *Muzumdar*, 438 F.3d at 761.  The Seventh Circuit read both provisions—including the one that omitted the word "only"—as "very strongly worded" and "mandatory language" because both used the word "shall."  The Seventh Circuit concluded that both provisions equally demonstrated the parties' intent that venue was exclusive in the selected forum.  *Id.* at 762.[1]

Here, the Court is similarly faced with a venue-selection provision that references both jurisdiction and venue and states venue "shall be proper" in the Western District of Kentucky but omits the word "only."  Based on the approach taken by the Seventh Circuit in *Muzumdar*, the Court concludes that this provision includes "mandatory language" that triggers exclusive venue in the Western District of Kentucky.

---

[1] As Wright points out, appellants in *Muzumdar* signed only one or the other of the agreements, not both.  Dkt. 54 at 2–3.  The Seventh Circuit read each clause separately, as demonstrated by its use of the word "or" rather than "and" when discussing the mandatory nature of the two provisions.  *Muzumdar*, 438 F.3d at 762.  Contrary to Arrive AI's suggestion, dkt. 53 at 8, the Seventh Circuit accordingly had opportunity to consider the mandatory nature of the phrase "shall be proper."

That said, the Court has concerns with this conclusion and the "magic words" approach it took to get here.   First, this approach—which has the characteristics of a canon of interpretation—is not rooted in Kentucky contract law, which is the law that the venue-selection clause in the parties' contract says the Court should apply.   As Arrive AI explains, "Kentucky law governs the Consulting Agreement and requires courts to construe unambiguous words in accordance with their ordinary meaning."   Dkt. 53 at 2–3 (citing *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 105 (Ky. 2003) and *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky. 1974)).   Accordingly, "[u]nder Kentucky's ordinary-meaning rule, the clause accomplishes only: (1) consent to personal jurisdiction in Kentucky; and (2) a waiver of venue objections if suit is filed there."   *Id.* at 5. Were it not for Seventh Circuit precedent, the Court would agree.   The phrase "shall be proper" in the Western District of Kentucky is clearly not the same as "shall be proper *only*" in the Western District of Kentucky.   But the Seventh Circuit in *Muzumdar* construed these phrases to the have same effect because it faithfully applied the interpretive rule that "where venue is specified with mandatory or obligatory language, the clause will be enforced," *Muzumdar* (citing *Paper Exp. Ltd.*, 972 F.2d 753), even though this approach has little to do with applying the ordinary meaning analysis typical of state contract law.

More fundamentally, any magic-words approach that does not at least consider ordinary meaning is unlikely to uncover the parties' true intent, which is the goal of contractual interpretation.   *Muzumdar* and similar cases pull in the opposition direction and support the conclusion of one scholar that, contrary to

standard contract interpretation methods, courts rarely parse the ordinary meaning of forum-selection clauses but look only for mandatory-sounding words or phrases. *See* Coyle at n.35. This is ironic because honoring parties' freedom of contract is why the Supreme Court first warmed up to the enforcement of forum selection clauses decades ago, though they were "historically not . . . favored by American courts." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972). Applying traditional contract interpretation methods rather than magic words respects the "legitimate expectations of the parties, manifested in their freely negotiated agreement." *Id.* at 12; *accord Atlantic Marine*, 571 U.S. at 63.

Finally, layering federal rules of contract interpretation on top of state contract law is inconsistent with the abrogation of federal common law imposed by *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). A primary reason federal courts consider venue-selection clauses today is because Section 1404(a) created a procedural rule giving district courts discretion over the most convenient forum for federal litigation. As the Supreme Court held in *Stewart*, the discretion codified in Section 1404(a) included the obligation to consider venue-selection clauses, even when state law forbade their enforcement. 487 U.S. at 30 (enforcing Section 1404(a) as binding procedural law under *Erie* and disregarding "Alabama's categorical policy disfavoring forum-selection clauses"). And the Supreme Court in *Atlantic Marine* took that holding a step further to make venue-selection clauses essentially *the* dispositive factor in a Section 1404(a) transfer motion "in all but the most exceptional cases." 571 U.S. at 59–60. But neither *Stewart* nor *Atlantic Marine* held that the discretion of federal courts to consider

and enforce venue-selection clauses under Rule 1404(a) included the right to create rules of contract interpretation that conflicted with substantive state law. The "magic words" approach to construing venue-selection clauses implicitly endorsed by the Seventh Circuit, however, has moved federal case law in that direction.  Perhaps a different approach is warranted.

Nonetheless, applying the approach required by the Seventh Circuit in *Muzumdar* and similar cases, the Court concludes that the parties' venue-selection clause is mandatory, which makes the Western District of Kentucky identified in that clause the exclusive venue.

This conclusion is not inconsistent with the public interest or the interests of justice.  The public interest factors courts consider under Section 1404(a) include docket congestion and likely speed to trial between the fora, each court's relative familiarity with the relevant law, the respective desirability of resolving controversies in each locale, and the relationship of each community to the controversy.  *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010); *see also Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 500 (6th Cir. 2016).

This is a dispute, in part, about a contract governed by Kentucky law involving a Kentucky company and that was performed and breached in Kentucky.  Kentucky has a meaningful connection to this case.  Litigating this case in the Western District of Kentucky will not be any more inconvenient for the Plaintiff than it is for Defendants to continue litigating in Indiana.  And a Western District of Kentucky judge will be well-equipped, perhaps better

8

equipped, to resolve the parties' disputes under Kentucky law. Plaintiff argues this case also involves some matters of Delaware law and application of Indiana tort law. Dkt. 53 at 16. But this does not imply that transfer to a Kentucky federal court is unjust. Any court will have to apply the law from multiple states. As with the convenience of the parties factor, it will not be any more difficult for a Kentucky federal court to apply Indiana tort law than an Indiana federal court to apply Kentucky contract law, or either to apply Delaware law.

The parties present interesting statistics that—depending on which ones are considered—lead to conflicting conclusions about which jurisdiction is more congested or efficient. This issue is not dispositive either way considering the other factors. At bottom, transferring this case is not inconsistent with the public interest and the interests of justice.

## IV. CONCLUSION

For the foregoing reasons, the motion to transfer venue is **GRANTED**. Dkt. [50]. The clerk **SHALL TRANSFER** this case to the Western District of Kentucky, Louisville division and close this case on the docket. Defendants' motion to dismiss remains pending and will be addressed by the Western District of Kentucky upon transfer.

**SO ORDERED.**

Date: 7/24/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

9

Distribution:

All ECF-registered counsel of record